# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LARRY BANDY, RITA BANDY, ) <br> KEITH BREEDEN, KIM BREEDEN, ) <br> GIL DICK, SHARON DICK, NORMAN ) <br> ARDEN and CRYSTAL ARDEN, ) <br> C. L., a minor, by her Mother ) <br> and NaturalGuardian Crystal Arden, ) <br> C.A., a minor, by her Father and Natural ) <br> Guardian Norman Arden, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> TRIGEN-BIOPOWER, INC., ) <br> ) <br> Defendant. ) | No. 3:02-CV-459 <br> Phillips/Guyton |

## MEMORANDUM AND ORDER

This is an action that involves residents claiming injury from fugitive particle emissions released from an adjacent operating facility. Defendant filed a motion for summary judgement on the issue of punitive damages [Doc. 169], as well as a motion for a Daubert hearing and for exclusion of certain testimony of plaintiffs' medical expert [Doc. 174]. In connection with these motions, plaintiffs filed a motion for leave to file supplemental brief [Doc. 177] and requested leave to file excerpts from Dr. Charles W. Bruton's deposition in their supplemental memorandum in support of their response in opposition to defendant's motion [Doc. 181]. The motions were extensively briefed by parties. Additionally, the issues were presented to the Court in oral argument. For the reasons stated at oral argument, and which are hereby expressed more fully below, the

1

Court **DENIED** defendant's motion for summary judgement and defendant's motion for a Daubert hearing and for exclusion of certain testimony. Furthermore, the Court **GRANTED** plaintiffs' motion for leave to file a supplemental brief and plaintiff's request to file excerpts from Dr. Bruton's deposition.

## BACKGROUND

Trigen BioPower, Inc. ("Trigen") operates a steam generating facility in Loudon County, Tennessee. The facility utilizes an industrial boiler that is fueled by waste wood and paper sludge from the adjacent Kimberly-Clark plant to create energy. While Trigen is utilizing new technology of recycling waste products to produce a reasonably priced commercial energy, their operations produce a considerable amount of fly ash and dust, what has come to be known in the regulatory world as "fugitive emissions." For the Bandy family and others, the dust and ash particles from these manufacturing operations migrated and continue to migrate to residences that neighbor Trigen's operations.

The itinerant dust and fly ash prompted suit from several families. The plaintiff families sued the company under essentially four legal theories: (1) trespass to property, (2) temporary nuisance, (3) negligent infliction of emotional distress, and (4) willful and wanton misconduct. The plaintiffs assert that the defendant's actions warrant the imposition of compensatory and punitive damages, as well as injunctive relief.

2

Defendant filed a motion for summary judgment on the issue of punitive damages asserting that its conduct is in accordance with federal law and that the plaintiffs cannot establish that it acted either intentionally, fraudulently, maliciously, and/or recklessly by clear and convincing evidence to warrant punitive damages. Additionally, since plaintiffs seek to use a pulmonologist, Paul D. Banick, M.D. ("Dr. Banick"), as an expert to support their claims for damages, Trigen filed the motion to exclude his reports and testimony, either existing or to be submitted/given, which opine as to: 1) "possible" health effects, 2) reasonableness of fears, 3) need for medical monitoring, and 4) any associated risks that are based on studies that are inapplicable to the plaintiffs. Essentially, Trigen opposes Dr. Banick giving testimony regarding his belief that plaintiffs' fears are reasonable and that medical monitoring is needed.

## **LAW AND ANALYSIS**

While the plaintiffs' motions concerning leave to file a supplemental brief and a request to file excerpts from Dr. Bruton's deposition do not warrant legal analysis and discussion, defendant's motion for summary judgment on the issue of punitive damages and defendant's motion for a Daubert hearing and for exclusion of certain testimony of plaintiffs' medical expert will be addressed in some length by the Court.

*I.     Motion for Summary Judgment*

*A. Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6thCir.1997); and *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6thCir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6thCir.1996).

### B. Punitive Damages

Before discussing its actions under a *Hodge* punitive damages legal analysis, defendant submits that since its operations are in compliance with its Title V permit, a

4

punitive award in this case would suggest that compliance with Title V is meaningless and trivial. Trigen cites no case law to support its argument. In response, plaintiffs argue that the compliance with industry standards can only be observed and measured in the daytime hours and that large amounts of sawdust and ash fall on their property overnight.

The Court notes that compliance with a Title V permit (industry standard) is merely a factor in the punitive damage analysis. See *Edwards v. ATRO SpA*, 891 F.Supp. 1074 (S.D.N.C., 1995); and *Pfeiffer v. Eagle Mfg. Co.*, 1992 WL 26035 (D.Kan. Jan. 16, 1992). The *Edwards* and *Pfeiffer* matters involved product liability actions denying summary judgment on the issue of punitive damages stating that evidence of industry standards as well as noncompliance are admissible and that, should the plaintiff carry the burden of proof regarding proximate cause of injuries, the question of punitive damages will be a jury determination based upon its assessment of the testimony of the witnesses and the evidence of noncompliance/compliance with industry standards and internal procedures.

Having addressed defendant's assertions regarding substantial compliance with existing standards, the Court next analyzes defendant's actions in accordance with the well-established principles of punitive damages in *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992). In *Hodge*, the Tennessee Supreme Court instructed that a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly. *Id.*

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts

> fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Id.* (*citations omitted*). A plaintiff must prove that the defendant acted either intentionally, fraudulently, maliciously, or recklessly by clear and convincing evidence. *Id.* "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at n.3.

It is well established that homeowners can bring an action in trespass and assert punitive damages against a company allegedly emitting pollutants and/or particles, which deposit upon a plaintiff's property. *See Velsicol Chemical Corp. v. Rowe*, 543 S.W.2d 337, 338(Tenn. 1976); *Anderson v. American Limestone Co., Inc.*, 168 S.W.3d 757, 759-60 (Tenn.Ct.App. 2004); *Cathey v. Johns-Manville Sales Corporation*, 776 F.2d 1565, 1580 (6thCir. 1985); *Meighan v. Sprint Communications Company*, 924 S.W.2d 632 (Tenn. 1996); *Peach v. Medlin*, 2004 WL 948481, *14 (Tenn.Ct.App. April 28, 2004) (trespass matters essentially stating that punitive damage claims have long been deemed compatible with the negligence cause of action including trespass despite the fact that considerably more, sometimes different, proof is required to establish that a defendant's conduct was 'willful and wanton' or 'malicious' rather than merely negligent). In regard to a suit filed on a nuisance theory, punitive damages may be awarded to a plaintiff if the trier of fact finds

6

that a defendant has acted either intentionally, fraudulently, maliciously, or recklessly as set out in the *Hodge* decision. *Richardson v. Stacey*, 2002 WL 1838154, *6-7(Tenn.Ct.App. Aug.13, 2002).

The defendant attempts to distinguish factual differences between the case at bar and the cases the plaintiffs have cited in both trespass and nuisance. Not only does the defendant fail to cite any cases in support of its own argument barring punitive damages in trespass and nuisance actions, but defendant's assertions of distinguishing the instant case from case law supporting punitive damages in trespass and nuisance actions miss the mark.[1]

Given the *Hodges* standard and considering the motion for summary judgment in the light most favorable to the plaintiff, the jury could find that Trigen acted intentionally and/or recklessly. Generally, "[i]t is established law that an award of punitive damages lies within the discretion of the trier of facts." *Whittington v. Grand Valley Lakes, Inc.,* 547 S.W.2d 241,243 (Tenn.1977). Given the evidence submitted by the plaintiffs, a jury could reasonably find that Trigen operated its waste material processing facility for ten years without proper air pollution controls sufficient to stop its air pollution, all the time knowing that its fugitive emissions created a nuisance and/or trespass but refusing to take action until a district court ordered it. The Court cannot rule, as a matter of law, that the plaintiffs

---

[1] There is no need to discuss plaintiffs' claim for negligent infliction of emotional distress, as it relates to punitive damages. If punitive damages are permitted in only one of plaintiffs' negligence theories (trespass, temporary nuisance, or emotional distress), then punitive damages are permitted in the instant matter. *See Ellis v. Gallatin Steel Company*, 390 F.3d 461, 473 (6thCir. 2004).

7

are foreclosed from raising the issue of punitive damages at trial.

The Court acknowledges that Trigen has taken steps to alleviate the environmental problem; however, a jury could find that while some steps to reduce fugitive dust were taken, Trigen, on a whole, refused to consistently take the steps necessary to stop fugitive emissions from crossing the plaintiffs' property lines. Further, it appears to the Court that the defendant only offers an explanation as to why a jury might not reach the conclusion for punitive damages. The defendant does not submit an explanation supported by case law as to why an award of punitive damages would be error.

## II. Daubert Hearing

### A. Introduction

Trigen states that the expert's testimony is unreliable and incompetent pursuant to Federal Rules of Evidence 401 and 702. In Trigen's analysis of reliability and relevancy under rule 702, Trigen claims that since Dr. Banick does not describe a theory or technique that he used in reaching his conclusions, it is impossible to determine whether any possible theory or technique was tested, subjected to peer review and publication, identified with known error rate or maintenance of standards controlling his operations, and/or accepted in the scientific community. Trigen also asserts that expert testimony on the issue of emotional distress is not needed and will only be prejudicial, superfluous, well beyond the

8

expertise of a pulmonologist, and/or would be lay opinion proffered in the guise of expert testimony. Further, Trigen submits that the expert's opinion for the necessity for medical monitoring is only speculation as to *possible* future injury, not as to *probable* future injury and, therefore, should be excluded.

In response, plaintiffs state that they plan to properly offer expert proof for the purposes of establishing: (1) that plaintiffs have suffered emotional distress as a result of emissions from Trigen's operations and (2) that plaintiffs' claim for medical monitoring should be part of plaintiffs' recovery. Plaintiffs assert that they should be able to present testimony from Dr. Banick because the jury most likely will be unaware of the seriousness of the health hazards posed by breathing wood dust. Plaintiffs are not contending that exposure to breathing particle matter actually caused injury, but that concerns of exposure are serious, as well as reasonable from a medical standpoint. In that regard, Dr. Banick's testimony indicates that "nobody really knows the environmental effects of sawdust" and that it is not known at present if the plaintiffs are ever going to be affected by breathing wood dust or saw dust from the Trigen facility. However, as Dr. Banick indicated, " ... the lack of certainty sometimes generates the concern." Further, the plaintiffs feel that expert testimony is necessary to assist the trier of fact to understand the need for medical monitoring.

In response, Trigen takes issue with allowing the expert to essentially state that the plaintiffs' fear of injury is reasonable and reasserts that the doctor's theories are based on

improper evidence. Trigen also asserts that "concern," as stated by the expert, is not the threshold requirement for a legal discussion as to medical damages.

### B. Case Law

As background into the subject matter at issue, case law supports claims for medical monitoring and negligent infliction of emotional distress (fear) where only an "increased risk" is asserted. *See Sutton v. St. Judge Medical S.C., Inc.,* 419 F.3d 568, 571-575 (6thCir. 2005)*; Day v. NLO*, 851 F.Supp. 869, 880 (S.D.Ohio 1994) *(plaintiffs were exposed to radiation);* and Laxton v. Orkin Extermination Co., 639 S.W.2d 431, 434 (Tenn. 1982) (*water contamination matter*); *see also Sterling v. Velsicol Chemical Corporation*, 855 F.2d 1188, 1206 (6thCir. 1988) (*water contamination matter*). In such cases, the jury may find that plaintiffs have sustained sufficient physical injury to award for mental anguish and medical monitoring despite a subsequent medical diagnosis that fails to reveal any other physical injury. The *de minimus* "physical injury" of ingesting a harmful substance can sufficiently satisfy the physical injury or manifestation rule so as to justify the award of emotional distress damages and medical monitoring. *See Isabel v. Velsicol Chemical Co.*, 327 F.Supp.2d 915, 919 (W.D.Tenn. 2004). Having established that both damages *may be* awarded by a jury, the Court addresses the defendant's motion of whether an expert may be utilized to support the plaintiffs proof for medical monitoring and emotional distress.

### I. Medical Monitoring

The Court notes that plaintiffs regularly use expert testimony in cases of increased risk of injury to substantiate claims for medical monitoring. For example, in *Sterling v.*

10

*Velsicol Chemical* Corp., 855 F.2d at 1206 n. 23, plaintiff produced medical and scientific evidence that justified the plaintiff's fears. Further, the *Day* Court stated that to recover damages for medical monitoring, it is sufficient for the plaintiff to show by expert medical testimony that the plaintiffs have an increased risk of disease, which would warrant a reasonable physician to order monitoring. *Day*, 851 F.Supp. at 881. Indeed, a plaintiff may utilize medical experts for two purposes: 1) to convey medical understanding of the particular disease(s) with protracted latency periods, and 2) to determine the reasonableness of the tests/monitoring, with minimal risks of uncertain, speculative, or conjectural recoveries. *Id.* at 880-81.

Other districts have delivered opinions of persuasive reasoning for medical monitoring in similar situations. In *Merry v. Westinghouse Electric Corp.*, 684 F.Supp. 847 (M.D.Pa. 1988), the Court was faced with a water well contamination in which the plaintiffs were required to prove potential for injury. The defendant contended that, as a matter of law, there was no potential for injury because the plaintiffs' experts were unable to quantify the risks to the plaintiffs. *Id.* at 850. Further, the defense argued that the plaintiffs' experts had not personally examined the plaintiffs, rather the experts' reports were based on laboratory and clinical studies, other documents, and various reports (as in the instant matter). *Id.* at 851. Plaintiffs' experts admitted that they could not provide a scientifically sound conclusion as to the precise degree of risk faced by the plaintiffs. *Id.* However, after a lengthy analysis, which cites and refers to numerous cases that allowed medical surveillance, the Court ultimately decided that, though they may not convince a jury, the

experts had created an issue of fact to the probability of contracting a serious illness as a result of the exposure to the hazardous substance. *Id.* at 852. Further, the Court stated that it would be reasonable for the jury to conclude that the plaintiffs have a significantly but unquantifiably enhanced risk of serious disease, and that such enhanced risk of disease justifies periodic medical examinations. *Id.*

The above reasoning is persuasive and applicable. In the present case, Dr. Banick articulates in his report and testimony that plaintiffs have an increased risk of various medical maladies as a result of breathing in particles produced from Trigen's operations. Further, Dr. Banick's qualifications as a physician are undisputed, and he, as a physician, recommends medical monitoring. The plaintiffs should be permitted to utilize Dr. Banick's testimony to support their claim for medical monitoring, and the jury will give the testimony its appropriate weight. In this situation, a defendant could combat expert testimony at trial by cross examination and by presenting their own physicians with differing opinions.

    ii.  *Emotional distress*

In *Cantrell v. GAF Corp.*, 999 F.2d 1007 (6thCir. 1993), defendants challenged plaintiff's expert linking asbestos and cancer. The expert explained that cigarettes and asbestos work in a synergistic fashion to make the *likelihood* of cancer much greater. *Id.* at 1012-13. Defendants claimed that the expert's testimony did not constitute proper epidemiologic evidence. *Id.* at 1013. Defendants further asserted that the evidence was more prejudicial than probative under Fed.R.Evid. 403. *Id.* The trial court overruled

12

defendants' motion in limine, holding that the testimony of the expert would be admitted, and that the jury could consider the weight to be given to that testimony in light of the opinions of defendants' expert. *Id.* at 1013-1014.

The *Merry* Court also addressed whether expert testimony should be permitted in plaintiffs' claims of emotional distress. *Merry*, 684 F.Supp. at 852. The plaintiffs' experts opined that although the effects of the exposures may be undetectable for long periods of time, the plaintiffs have suffered a present physical effect as a result. *Id.* Finding that the evidence supporting the plaintiffs' claims for medical surveillance costs to support plaintiffs' claims for emotional distress, the *Merry* Court stated that expert testimony on plaintiffs' emotional distress claims is appropriate to present to the jury for their evaluation.

In a medical malpractice action, a court held that expert testimony concerning increased susceptibility of an injury was permitted for purposes of proving emotional distress damages. *Petriello v. Kalman*, 215 Conn. 377, 576 A.2d 474 (Conn. 1990). In *Petriello*, the plaintiff argued during a motion in limine hearing that expert evidence concerning her increased risk of bowel obstruction was admissible for three reasons: 1) as evidence of fear of future disability; 2) as evidence that fear was rational; and 3) as evidence of a presently compensable injury. *Id.* at 389. In their appeal, the defense argued that the court erred in allowing experts to speculate on the plaintiff's *possibilities* of developing a bowel obstruction. *Id.* at 388-89. The defendants claimed that an expert medical witness may only testify on a plaintiff's *probability* of incurring future injuries. *Id.*

13

However, the reviewing court concluded that the evidence was admissible for *all* of plaintiff's three purposes. *Id.* at 389. The *Petriello* Court also held that expert testimony regarding the plaintiff's increased risk of suffering a future bowel obstruction was admissible on the issue of whether the plaintiff's anxiety was rationally based (plaintiff was allowed to prove that her anxiety was both subjectively held and objectively reasonable). *Id.* at 390. The expert testimony was also admitted for the likelihood that the plaintiff would experience a bowel obstruction at a later date.

Dr. Banick has articulated that small particles, less than 2.5μ in diameter, can be inhaled into the respiratory tract with normal breathing and that chronic inhalation of these particles *could be* associated with long term health problems. Dr. Banick goes on to discuss all of the possibilities of health complications that *may* arise. Based upon these possibilities, Dr. Banick states that plaintiffs' "fears are well founded" and that "plaintiffs' fears of long term health effects are reasonable." Given the expert's knowledge, training, and experience, Dr. Banick is qualified to render a medical opinion to show that the plaintiffs' fears and concerns are objectively reasonable.[2]

Dr. Banick, himself, has acknowledged that the harms of ingesting small wood particles are "possibilities," rather than "probabilities," and he discloses inadequacies in the information he relies upon. Dr. Banick will be subjected to cross examination, and his

---

[2]Plaintiffs have submitted excerpts from the deposition of Dr. Charles W. Bruton, Jr., which supports Dr. Banick's testimony.

14

views may be countered by the testimony of a defense expert. In final analysis, defendant's objection to Dr. Banick's testimony goes to the weight that this evidence should be accorded by the jury, not to its admissibility. See *Scholz Homes, Inc. v. Wallace,* 590 F.2d 860, 863 (10thCir. 1979).

## **CONCLUSION**

For the reasons stated during oral argument and hereinabove set forth, defendant's motion for summary judgement on the issue of punitive damages [Doc. 169] is **DENIED**; defendant's motion for a Daubert hearing and for exclusion of certain testimony of plaintiffs' medical expert [Doc. 174] is **DENIED**; plaintiffs' motion for leave to file supplemental brief [Doc. 177] is **GRANTED**; and plaintiff's request for leave to file excerpts from Dr. Bruton's deposition in their supplemental memorandum in support of their response in opposition to defendant's motion [Doc. 181] is **GRANTED**.

**IT IS SO ORDERED.**

              **ENTER:**

              s/Thomas W. Phillips
              United States District Judge